**UNITED GENERAL TITLE INSURANCE COMPANY**

v.

**LAND TITLE RESEARCH OF MARYLAND, INC., et al.**

Civ. No. Y–94–2846.

United States District Court, D. Maryland.

Feb. 10, 1995.

Andrew D. Levy, and Joseph B. Espo, Baltimore, MD, for plaintiff United General Title Ins. Co.

Paul W. Grimm, and Gina M. Harasti, Esquire, Baltimore, MD, for movant James A. Gordon.

Joseph N. Schaller, Baltimore, MD, for intervenor-plaintiff Signet Bank/Maryland.

Richard Fine, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

United General Title Insurance Company ("United") filed suit alleging breach of contract, fraud, and negligence against its former limited agent Land Title Research of Maryland ("Land Title") and Joseph E. Goldberg, Sr. The Court granted a preliminary injunction which prohibited Land Title or Goldberg from wasting assets and also transferred $955,805 from Land Title's accounts into the Registry of the Court. Special Deputy Insurance Commissioner James A. Gordon, on behalf of the Insurance Commissioner of Maryland, seeks a stay of the court's proceedings and release of those funds to Gordon for use as approved by the state receivership court.

United is an underwriter of title insurance, and Land Title was United's agent for the purposes of brokering insurance in Maryland. Land Title allegedly embezzled premiums and failed to pay loan proceeds, received in escrow following real estate closings, to sellers. United paid the sellers the amounts owed by Land Title and now seeks to recoup the escrow funds that comprise the bulk of the assets held by the court.

The Maryland Insurance Department has begun proceedings against Land Title as well. Gordon, charged with investigating Land Title, has determined that it is insolvent. He has advised the receivership court that within thirty days he will request the liquidation of Land Title. Gordon has asked this Court to stay its proceedings pending the outcome of the receivership court's determinations and to make those funds in the court's registry available to him for disbursement to potential claimants.

The basis for Gordon's motion for a stay and transfer of funds is the doctrine of Bur-

ford abstention. See, Burford v. Sun Oil, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In New Orleans Public Service Inc. v. Council of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989), the Supreme Court summarized the doctrine, finding in relevant part that a federal court should abstain from adjudicating a case, "[w]here timely and adequate state-court review is available ... [and] ... where the exercise of federal review of the question in [the] case ... would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial concern." The Burford doctrine "... has become the doctrine of choice in analyzing whether to abstain in favor of state insurance liquidation and rehabilitation proceedings." Property & Casualty Insurance v. Central National Insurance Company of Omaha, 936 F.2d 319, 321 (7th Cir.1991). Gordon asserts that the control of state receivership actions for the liquidation of insolvent insurance companies is of paramount importance to the State of Maryland and that the Court should not interfere with this process by continuing its proceedings or retaining seized assets.

United offers three arguments in opposition to Gordon's motion for a stay and a transfer of funds. First, United asserts that Land Title is not in the business of insurance and that Burford abstention would therefore be inappropriate.[1] United essentially concedes that real estate escrow agents, like Land Title, are in the business of insurance for the purposes of state law but argues that this designation is not binding for the purposes of a Burford analysis. Rather, it asserts that, as contemplated by the McCarran–Ferguson Act, 15 U.S.C. §§ 1011 et seq., the business of insurance involves the pooling of risks and a relationship of insurer to insured. United contends that Land Title was not in the business of insurance, because United, and not Land Title, bore the risk of loss and stood as insurer to the insured.

The McCarran–Ferguson Act has been held to contemplate multiple definitions for the business of insurance depending on the purpose of the provision. *Department of*

---

1. Although the *Burford* doctrine does not explicitly apply exclusively to matters of insurance, the vast majority of cases applying the doctrine have involved state regulation of insurance matters.

*Treasury v. Fabe,* —— U.S. ——, ——, 113 S.Ct. 2202, 2210, 124 L.Ed.2d 449, 462 (1993). None of those judicial constructions have included a consideration for the purposes of a *Burford* analysis. However, the Maryland Code, Art. 48A § 203(a), specifically defines "acting as an agent for or otherwise representing or aiding on behalf of another any person or insurer ...," as being in the business of insurance. Under Maryland law, therefore, Land Title was in the business of insurance. The purpose of *Burford* abstention is respect for important state processes, and that purpose would be undermined if the Court ran roughshod over the laws defining those processes in the absence of specific authority. Land Title was in the business of insurance for the purposes of a *Burford* analysis.

United next claims that there is no regulatory mechanism in place to hear its claims and therefore that the "timely and adequate" requirement for *Burford* abstention has not been met. United asserts that the state regulatory framework for resolution of claims against insolvent insurance companies is inadequate and that there is, as yet, no place for it to file a claim because no action has been brought against Land Title by the State of Maryland.

The Court has been assured that liquidation proceedings will be initiated within thirty days, and the mechanism for delinquency proceedings is described in Maryland Code Art. 48A § 132 et seq. United will be able to file a claim with the receivership court and be subject to the established rules of priority as set out in the Code. 48A § 147 et. seq. If it wishes to appeal any final determinations of the receivership court, it may seek relief in the Maryland Court of Special Appeals as provided for by Code Art. 48A § 133. Potential state court review of the pending action will thus be both timely and adequate.

Finally, United claims that the funds in the court's registry do not belong to Land Title or Gordon and therefore are not subject to transfer. It argues that escrow funds belong not to the holder but to those for whom they are held, in this case the sellers and cites Maryland Code Art. 48A § 132 as excluding from the definition of general assets those funds encumbered by a security interest, including funds held in escrow. United claims that Gordon thus has no right to the funds.

Gordon is not limited to acquisition of general assets of an insolvent insurer, however, for Code Art. 48A § 145(4) charges him with "the proper administration of all assets coming into his possession or control." Code Art. 48A § 145(2) requires Gordon to take title to "all of the property" of an insolvent insurer, whether secured or unsecured. While the status of funds may well be relevant to the ultimate disbursement of assets by the receivership court, it is not relevant to Gordon's legal responsibility to acquire the funds.

Denying the motion would be disruptive to the effectuation of a coherent state policy of substantial concern where adequate and timely state remedies exist. Accordingly, the Court will stay further proceedings and release all funds held in the court's registry to Deputy Insurance Commissioner James A. Gordon.

